UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIK A. COLLETT,                               Case No. 19-10426

            Plaintiff,                Stephanie Dawkins Davis
v.                                             United States District Judge

NICHOLAS WELLMAN,                              Curtis Ivy, Jr.
MATTHEW OLIVER, and                            United States Magistrate Judge
THOMAS AMROSS,

            Defendants.
_____/

**REPORT AND RECOMMENDATION**
**MOTION FOR SUMMARY JUDGMENT (ECF No. 29)**

## I.   PROCEDURAL HISTORY

On February 12, 2019, Plaintiff Erik Collett ("Plaintiff") filed his civil rights

complaint alleging members of the Taylor, Michigan Police Department ("TPD")

violated his constitutional rights.  (ECF No. 1).  The defendants named in the

complaint were the TPD, Nicholas Wellman ("Officer Wellman"), Matthew Oliver

("Officer Oliver"), Thomas Amross ("Officer Amross"), Jennifer Catner ("Officer

Catner") and Steven Porta ("Detective Porta").  On February 19, 2019, the Court

filed an opinion and order dismissing the TPD as it was not a legal entity subject to

suit under 42 U.S.C. § 1983.  (ECF No. 6, PageID.49).  The remaining defendants

then filed an answer on May 30, 2019, where they asserted several affirmative

defenses, including the doctrines of governmental, absolute, and qualified immunity.  (ECF No. 12).

Officers Wellman, Oliver, Amross and Catner, as well as Detective Porta filed their summary judgment motion on September 24, 2020.  (ECF No. 29).  On October 7, 2020, Plaintiff was ordered to file his response to the motion on or before November 16, 2020.  (ECF No. 30,).  On November 18, 2020, Defendants filed a reply brief in support of their motion for summary judgment highlighting a recently issued Sixth Circuit decision and noting Plaintiff's failure to file a responsive brief.  (ECF No. 33).  On December 7, 2020, Plaintiff was ordered to show cause in writing on or before January 21, 2021 as to why the Court should not recommend that Plaintiff's complaint be dismissed due to his failure to file a response.  (ECF No. 35).  On January 19, 2021, Plaintiff filed his response.[1]  (ECF No. 38).  On January 25, 2021, Defendants filed a supplemental reply in further support of their motion for summary judgment.  (ECF No. 42).

On January 21, 2021, the Court entered two stipulated orders dismissing Officer Catner and Detective Porta.[2]  (ECF Nos. 36 and 37).  The remaining

---

[1]  Defendant Officers' counsel received Plaintiff's response to its September 24, 2020 summary judgment on January 19, 2021.  While Plaintiff provided Defendant Officers' counsel with a copy of his response, he failed to file it with the Clerk's Office.  Plaintiff is reminded  he is required to submit all filings to the Clerks' Office in addition to serving copies on opposing counsel.

[2] On January 19, 2021, Plaintiff filed his response to Defendants' motion for summary judgment.  (ECF No. 38).  In his response, Plaintiff agreed with Defendants that Officer Catner

Defendants in this case are Officers Wellman, Oliver and Amross (collectively, "Defendant Officers").  The matter was referred to the undersigned on October 26, 2020 for all pretrial proceedings.  (ECF No. 32).

For the reasons set forth below, the undersigned **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED** and that Plaintiff's federal claims be **DISMISSED** with prejudice.  The undersigned further **RECOMMENDS** that the Court decline supplemental jurisdiction over the gross negligence claims.

## II.   FACTUAL BACKGROUND

### A.   Plaintiff's Complaint[3]

In his complaint, Plaintiff brought this action pursuant to  42 U.S.C. § 1983 alleging he suffered pain, suffering, physical injury and emotional distress as a result of the Defendant Officers' violation of his Eighth Amendment rights.  (ECF No. 1, PageID.11).  Plaintiff contends the violation of his rights arose out of an

---

"had no opportunity to intervene" during the incident in question as she was not present when the events at issue occurred.  (*Id.* at PageID.396).  Further, based on paragraph 5 of his response, Plaintiff agreed to dismiss his claims against Detective Porta as well.  (*Id.* at PageID.397).  Thus, based on the aforementioned, on January 21, 2021, the Court dismissed, with prejudice, the claims filed against Officer Catner and Detective Porta.  (ECF Nos. 36, 37).  As a result, the Court will not address the claims brought against or defenses raised on behalf of Officer Catner or Detective Porta.

[3]  Plaintiff lodges Eighth Amendment violation claims against Corporal James Pilchak, however, he is not listed as a defendant in the complaint caption and is not a party to the action. (*Id.*).  Further, Plaintiff has not proffered evidence to support a claim against Corporal Pilchak.

arrest effectuated by Defendant Officers on April 26, 2017.  (*Id.* at PageID.8-10).

From Plaintiff's perspective, the TPD and Defendant Officers failed to protect Plaintiff from unreasonable risk.  (*Id.* at PageID.10).  He contends that during his arrest, Defendant Officers used excessive force to subdue him although he was not unceasingly resisting.  (*Id.* at PageID.8-9).  He further purports Defendant Officers were grossly negligent and failed to execute their "duties correctly" (*Id.* at 10) as follows:

  i. Officer Oliver violated his Eighth Amendment rights when he used excessive force (*i.e.*, punching him in the face and on his body) during the arrest (*Id.* at PageID.11);

  ii. Officer Amross violated his Eighth Amendment rights when he failed to correct Officer Oliver's behavior or intervene on Plaintiff's behalf (*Id.*); and

  iii. Officer Wellman violated his Eighth Amendment rights by using his taser on Plaintiff after he was taken into custody (*Id.* at Page ID.12).

  iv. Officers Oliver and Wellman violated his First Amendment rights by retaliating against him (*i.e.*, using violence) for seeking redress from the prison through use of the prison grievance system resulting from their alleged actions.  (*Id.*).

Lastly, Plaintiff raises an intentional infliction of emotional distress claim based on

Defendant Officers' conduct which he maintains qualifies as "outrageous and extreme" and caused Plaintiff to suffer "emotional distress, physical injury and pain." (*Id.*).

    B.   <u>Factual Development</u>

On April 26, 2017, at approximately 5:35 a.m., Officers Oliver and Amross, both in uniform, responded to a breaking and entering alarm at 10890 Beech Daly Road, Taylor, Michigan. (*Id.*at 159-60; ECF No. 29-3, PageID.229). As they approached the building, Officer Oliver observed Plaintiff attempting to break in. (ECF No.29-2, PageID.160). Officer Oliver ordered Plaintiff to "freeze." (*Id.*). Plaintiff provides he recalled hearing someone identify themselves as a police officer. (ECF No. 29-3, PageID.235-36). Plaintiff then turned and fled. (*Id.*). He ran approximately 30 to 40 feet into a nearby wooded area and hid. (ECF No. 29-2, PageID.160; ECF No. 29-3, PageID.235-36, 238).

Officer Oliver reestablished contact with Officer Amross and waited for backup near the outskirts of the wooded area. (ECF No. 29-2, PageID.160, 163). They were eventually joined by Officer Wellman. (*Id.*). Later, Defendant Officers entered the woods and searched for Plaintiff. (*Id.*; ECF No. 29-3, PageID.239). During the search, Plaintiff's cellular telephone rang and Defendant Officers found him hiding in a patch of dense bushes. (ECF No. 29-2, PageID.160, 163; ECF No. 29-3, PageID.239). The officers gave Plaintiff several commands to exit the

bushes but he failed to respond.  (ECF No. 29-2, PageID.160; ECF No. 29-3, PageID.239-40).  In an attempt to remove Plaintiff from the bushes, Defendant Officers grabbed him.  (ECF No. 29-2, PageID.160, 163; ECF No. 29-3, PageID.239-40).  As Defendant Officers were pulling him out of the bushes, Plaintiff's pants began to fall to his ankles.  (ECF No. 29-3, PageID.239-40).  Defendant Officers directed Plaintiff to show them his hands and at one point, an officer used vulgarity while instructing Plaintiff to stop resisting.  (*Id.* at PageID.241-42, 245).  Subsequently, Plaintiff attempted to place his hands underneath his torso and moved them towards his waistline to retrieve his pants.  (ECF No. 29-2, PageID.160, 306-07).  In an attempt to gain control of Plaintiff's arms and hands, Defendant Officers struck Plaintiff.  (ECF No. 29-2, PageID.160, 163).  Eventually, Defendant Officers were able to lift Plaintiff to his feet and begin walking him out of the woods.  (ECF No. 29-3, PageID.249).

While being escorted from the woods, Plaintiff, using expletives, requested that an officer, who he was unable to identify, remove his hands from Plaintiff's person.  (*Id.* at PageID.250, 304-05).  Plaintiff also continued attempting to retrieve his pants.  (ECF No. 29-2, PageID.160; ECF No. 29-3, PageID.258, 264-65, 277).  Defendant Officers responded by striking Plaintiff in the torso and shoulder areas.  (*Id.*)  Plaintiff continued moving about and eventually Officer Wellman applied his

taser striking Plaintiff on two or three occasions[4].  (ECF No. 29-2, PageID.161, 163; ECF No. 29-3, PageID.258, 309-10, 316).

In the aftermath, Defendant Officers subdued Plaintiff and handcuffed him. (ECF No. 29-2, PageID.161, 163).  Plaintiff was then escorted to Corporal Pilchak's vehicle and transported to the station without further incident.  (*Id.*). During the fracas, Plaintiff sustained a bruise and swelling above his left eye.  (*Id.* at PageID.162).

On July 31, 2017, Plaintiff pled guilty in a Michigan state court to "resisting and obstructing and assaulting a police officer."  (ECF No. 29-3, PageID.255-56; ECF No. 29-4, PageID.342).

## III.   ANALYSIS AND CONCLUSION

### A.   Legal Standards

#### 1.   Summary Judgment Motion

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion

---

[4] Plaintiff's testimony was not clear as to when he was actually tased.  Early in his deposition, he alleged that Defendant Officers tased him after he was already on his feet.  (ECF No. 29-3, PageID.267).  Later in the deposition, he testified that he was still laying on the ground when he was tased.  (*Id.* at PageID.317).  This conflicting testimony, however, is immaterial as later explained in the Analysis section of this Report and Recommendation.

by: (A) citing to particular parts of materials in the record…; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In essence, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'" *Brown v. Scott*, 329 F. Supp. 2d 905, 910 (6th Cir. 2004).

In order to fulfill this burden, the non-moving party need only demonstrate the minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

When reviewing the facts, the Court "must view the factual evidence and draw all reasonable inferences in favor of the non-moving party." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005). However, mere allegations or denials in the nonmovant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 251.

The Court's role is limited to determining whether there is a genuine dispute about a material fact, that is, if the evidence in the case "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Such a determination requires that the Court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Id.* at 254. Thus, if the plaintiff must ultimately prove his case at trial by a preponderance of the evidence, on a motion for summary judgment the court must determine whether a jury could reasonably find that the plaintiff's factual contentions are true by a preponderance of the evidence. *See id.* at 252-53. Finally, if the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the movant is entitled to summary judgment. *Celotex Corp.*, 477 U.S. at 323. The Court must construe Rule 56 with due regard not only for the rights of those "asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury," but also for the

rights of those "opposing such claims and defenses to demonstrate in the manner

provided by the Rule, prior to trial, that the claims and defenses have no factual

basis." *Id.* at 327.

> 2.      Defendants and their Alleged Actions Must be Identified with
>         Particularity

To hold a government employee (e.g., a police officer) individually liable

for engaging in unconstitutional misconduct under 42 U.S.C. § 1983 the plaintiff

must "specifically link the officer's involvement to the constitutional infirmity."

*Burley v. Gagacki*, 834 F.3d 606, 615 (6th Cir. 2016).  Further, the plaintiff "must

be able to identify with particularity the individual who engaged in the alleged

misconduct as under a 1983 claim an individual 'is only liable for his or her own

misconduct.'"  *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).  Failure to

do so will result in the dismissal of the claims lodged against the respective

defendant.  *Burley*, 834 F.3d at 615; *see also Caudell v. City of Loveland*, 226 F.

App'x 479, 481 (6th Cir. 2007); *Thorton v. Spooner*, 872 F.2d 1029 at *2, (6th Cir.

1989) (affirming trial judge's ruling that questions of fact regarding the claims

against the police officers did not exist as plaintiff's own testimony exculpated

them); *Jones v. City of Detroit*, 904 F.2d 707 at *2 (6th Cir. 1990) (affirming the

lower court's grant of summary judgment as plaintiffs were unable to establish the

identity or badge number of the officers who mistreated them).

> 3.      Qualified Immunity

The Supreme Court has stated "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This legal concept is generally referred to as qualified immunity.

The Supreme Court has established a two-part test in order to determine whether qualified immunity is applicable to a particular situation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). One part of the test involves a determination of whether the facts of the case, viewed in the light most favorable to the plaintiff, "show the officer's conduct violated a constitutional right." *Id.* If this question was resolved in the affirmative, then the court would decide "whether the right was clearly established." *Id.* If both questions are resolved in the affirmative, then the doctrine of qualified immunity would not apply, and the case could proceed. Conversely, if the answer to either question is no, then qualified immunity obtains. The court may consider the questions in whichever order makes the most sense dependent on the facts of the case. *Pearson v. Callahan*, 555 U.S. 223, 227 (2009). Generally under the second prong of this analysis, "[a] right is clearly established if '[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Hearring v.*

11

*Sliwowski*, 712 F.3d 275, 279 (6th Cir. 2013) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (citing *Grawey v. Drury*, 567 F.3d 302, 313 (6th Cir. 2009)). "While there need not be 'a case directly on point' for the law to be clearly established, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Barton v. Martin*, 2020 WL 595981, at *4 (6th Cir. 2020)(quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "When a defendant invokes qualified immunity in a motion for summary judgement, the plaintiff must offer sufficient evidence to create a genuine dispute of fact that the defendant violated a clearly established right." *Folks v. Petit*, 676 F. App'x. 567, 569 (6th Cir. 2017) (citing *DiLuzio v. Vill. of Yorkville*, 796 F.3d 604, 608-09 (6th Cir. 2015)).

> B.   <u>Defendants Have Met Their Initial Summary Judgment Burden</u>

> > 1.   § 1983 Excessive Force Claim

Excessive force claims may be brought under the Fourth Amendment, Eighth Amendment, or Fourteenth Amendment. *Phelps v. Coy.*, 286 F.3d 295, 299 (6th Cir. 2020). "Which amendment applies depends on the status of the plaintiff at the time of the incident, whether free citizen, convicted, prisoner, or something in between." *See id*. (quoting *Gravely v. Madden*, 142 F.3d 345, 348-49 (6th Cir. 1998)). If the incident involved a free citizen and "the use of force occurred in the course of an arrest or other seizure of the plaintiff, the plaintiff's claim arises under

12

the Fourth Amendment and its reasonableness standard." *Id*. (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)).  This standard "requires that the officer's use of force be objectively reasonable, balancing the cost to the individual against the government's interests in effecting the seizure." *Id*. (citing *Graham*, 490 U.S. at 396).  If the force occurs when the plaintiff is a convicted prisoner, the Eighth Amendment sets the standard for the claim.  *Id*. (citing *Graham*, 490 U.S. at 395, n. 10).  "Finally, if a plaintiff is not in a situation where his rights are governed by the particular provisions of the Fourth or Eighth Amendments, the more generally applicable due process clause of the Fourteenth Amendment still provides the individual some protection against physical abuse by officials." *Id*. at 300 (citing *Darrah v. City of Oak Park*, 255 F.3d 301, 306 (6th Cir. 2001)).  The Due Process Clause of the Fourteenth Amendment "protects a pretrial detainee from the use of excessive force that amounts to punishment." *Id*. (citing *Graham*, 490 U.S. at 395, n. 10).

Plaintiff raises an excessive force claim in his complaint and alleges that Defendant Officers violated his rights under the Eighth Amendment and caused him "suffering, physical injury, and emotional distress." (ECF No. 1, PageID.9-11).  However, as the alleged excessive force occurred during an arrest, at which time Plaintiff was a free citizen, the Fourth, not Eighth, Amendment applies. *Phelps*, 286 F.3d at 299; *see also Graham*, 490 U.S. at 395 (holding that claims

13

alleging police officers have used excessive force during the course of an arrest, investigatory stop, or some other form of a seizure of a free citizen are "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard."). Therefore, the Court will examine Plaintiff's excessive force claims under the Fourth Amendment objective reasonableness standard.

The reasonableness test under the Fourth Amendment "is not capable of precise definition or mechanical application." *Graham*, 490 U.S. at 395 (internal quotations omitted). "[H]owever, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (internal citations omitted). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, and its calculus must embody an allowance for the fact that police officers are often forced to make split-second decisions about the amount of force necessary in a particular situation." *Id.* at 387. Under this standard, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers" will qualify as a violation of the Fourth Amendment. *Id.* at 396.

The Supreme Court has "long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id*.  In circumstances where a citizen is resisting arrest, police officers may use force to subdue the individual in order to effectuate the arrest. *Rudlaff v. Gillispie*, 791 F.3d 638, 639 (6th Cir. 2015).  Moreover, the Sixth Circuit has held that officials are entitled to qualified immunity in the face of excessive force allegations even when the plaintiff "was suspected of relatively minor crimes" if the plaintiff resisted and the officials responded with force. *See Wysong v. City of Heath*, 2008 WL 185798, at *6-7 (6th Cir. 2008).

Plaintiff alleges the actions taken and force exerted by Defendant Officers during the April 26, 2017 incident were excessive (ECF No. 1, PageID.9), while Defendant Officers maintain their actions are protected by qualified immunity (ECF No. 29, PageID.142-47).  As this case involves multiple defendants, each respective "defendant's liability must be assessed individually based on his own actions." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010).  The Court will analyze the evidence included in the record in the light most favorable to the nonmovant, *i.e.*, Plaintiff.

a. *Closed Fist Strike Administered During Arrest*

Based on the undersigned's review of the evidentiary record, the force used by Defendant Officers to subdue Plaintiff while attempting to arrest him is protected by qualified immunity.  Plaintiff's deposition testimony is riddled with admissions that during the April 26, 2017 incident he did not comply with Defendant Officers' commands and directions during the arrest and that he was in fact resisting arrest.  First, Plaintiff fled from Officer Oliver after he identified himself as an officer and instructed him to stop.  (ECF No.29-3, PageID.236).  Second, he attempted to hide in the woods.  (*Id.*).  Third, he was verbally resistant during the arrest (*Id.* at 250) and while using explicit language, instructed officers to unhand him.  (*Id.*).  Fourth, as Defendant Officers were removing him from the bushes, he proceeded to place his arms underneath his torso and reach towards his waistline.  (*Id.* at PageID.160, 306-07).  Lastly, after officers placed him on his feet, he continued to attempt to retrieve his pants despite the officer's repeated request for him to stop resisting.  (*Id.* at PageID.305-06).

Plaintiff contends the force used was unnecessary as he was merely attempting to pull up his pants and was not failing to follow  Defendant Officers' commands.  (*Id.* at PageID.306).  Further, Plaintiff  maintains he placed his hands under him while being handcuffed "because excessive force was being used by the officers by grinding [his] face and torso into the ground."  (ECF No. 38, PageID.396-397).  He also argues Defendant Officers did not provide him

16

sufficient time to respond to their verbal demands before using a taser on him during the arrest.  (*Id.* at PageID.395).  Plaintiff's explanations do not invalidate his failure  to yield to Defendant Officers' instructions as they attempted to arrest him.  Even if Plaintiff was intending to pull up his pants, an objectively reasonable officer would not have been able to surmise Plaintiff's intent, especially in light of his earlier actions, at that moment.  Moreover, Plaintiff's argument is undermined by his admissions during his deposition—at certain times during the April 26, 2017 incident he admitted he was in fact resisting arrest.  (ECF No.29-3, PageID.236, 305-06).  Further, on July 31, 2017 Plaintiff pled guilty to "resisting and obstructing and assaulting a police officer." (ECF No.29-3, PageID.236, 305-06).

When an individual actively resists arrest, the police are permitted to use force to subdue him.  *Rudlaff*, 791 F.3d at 639.  Furthermore, as this court has previously recognized, in certain instances officers are entitled to qualified immunity if they punch an arrestee with a closed fist if the arrestee is continually attempting to pull away from the arresting officers and generally resisting their efforts to handcuff him.  *Brady v. City of Westland*, 1 F. Supp.3d 729, 738-39 (E.D. Mich. 2014).

Based on these facts and the current state of the law, Plaintiff failed to show that Defendant Officers violated his Fourth Amendment constitutional right.  Further, as discussed below, Plaintiff cannot maintain his excessive force action as

17

to the closed fist punch against any of Defendant Officers as he is unable to identify which officer allegedly administered the strike during his arrest.  Thus, the undersigned recommends the excessive force claims in regard to the closed fist punch be dismissed with prejudice as to Defendant Officers.

### b. *Officer Wellman's Use of a Taser*

Plaintiff argues Officer Wellman's use of the taser during his arrest was excessive as he was allegedly in "custody" when Officer Wellman deployed it. (ECF No. 38, PageID.396).  Defendants counter there is no constitutional right to be free from strikes and taser application when resisting arrest.  (ECF No. 29, PageID.147).

During his deposition, Plaintiff provided conflicting testimony as to when the taser was actually deployed.  Early in the deposition, he alleged the taser was applied while he was on his feet.  (ECF No. 29-3, PageID.267).  Later in the deposition, Plaintiff testified  he was still laying on the ground when he was tased. (*Id.* at PageID.317).  However, the conflicting accounts are insufficient to create a material issue of fact as the taser was deployed prior to Plaintiff being placed in handcuffs, and while Defendant Officers were attempting to subdue him.  (*Id.* at PageID.267, 317).  Thus, Defendant Officers, including Officer Wellman, were still in the process of attempting to effectuate Plaintiff's arrest and permitted to use

the force necessary to  do so as Plaintiff, who admittedly was still trying to pull up his pants, was not complying with their directions.

The instant case is similar to *Rudlaff*, 791 F.3d 638.  In *Rudlaff*, while attempting to effectuate an arrest the suspect resisted and refused to be handcuffed. *Id*. at 639.  While the officer attempted to handcuff the suspect, the suspect swung his arms in the officer's direction in an attempt to resist being handcuffed.  *Id.* at 640.  Despite being instructed on at least two occasions, the suspect did not comply and instead "ball[ed] up."  *Id.*  Officers then used force, including a knee strike and taser, to subdue the suspect.  *Id.*  The taser was administered after the issuance of the knee strike was unsuccessful in subduing the suspect.  *Id.*  In that case, in light of the use of both a knee strike and a taser, the Sixth Circuit held "[w]hen an arrestee actively resists arrest like [the suspect] did, the police can constitutionally use a taser or a knee strike to subdue him."  *Id.*; *see also Thomas v. City of Eastpointe*, 715 F. App'x 458, 460 (6th Cir. 2017) ("A suspect actively resists arrest when he 'physically struggles with police, threatens or disobeys officers, or refuses to be handcuffed.") (citing *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 495-46 (6th Cir. 2012)).

Based on the facts before the Court, and the current state of the law, Plaintiff failed to show that Officer Wellman violated his Fourth Amendment constitutional right.  Thus, the undersigned recommends that the excessive force claim against

Officer Wellman be dismissed with prejudice.

   2.   § 1983 Excessive Force Claim as to Officers Amross and
        Oliver

To support his excessive force claim under 42 U.S.C. § 1983 against

Officers Amross and Oliver, Plaintiff must identify with particularity what

unconstitutional conduct was taken and by which defendant. *Burley*, 834 F.3d at

615. Plaintiff testified during his February 11, 2020 deposition that he was unable

to recall the specific name(s) or badge number(s) of the individual(s) who he

alleges used excessive force by hitting him during his arrest. (ECF No. 29-3,

PageID.244-46, 251-52, 254). Instead, Plaintiff states the specific allegations

included in his complaint are based on the police reports created following the

incident on April 26, 2017. (*Id.* at PageID.254). While he provided details as to

the actions taken by an officer, at no point during his deposition did he identify

either Officer Amross or Oliver as the police officer committing the acts.

Further, Plaintiff testified he relied on the police reports while preparing his

complaint and the reports provided him with the information regarding which

officers were at the scene of the incident. (*Id.*). Plaintiff is correct the police

reports identify which officers were involved in his arrest and confirm that officers

administered strikes during his arrest, however, the reports provide nothing more.

(ECF No. 29-2, PageID.160) ("Officers administered several open hand strikes to

Collett's torso and shoulder area in order to gain control of his arms."). The

reports fail to provide the necessary details to identify which officers administered the allegedly improper strikes.  (*Id.*).  Without these crucial details, Plaintiff's claims against Officers Amross and Oliver fail. *Jones v. City of Detroit*, 904 F.2d 707 at *2 (6th Cir. 1990) (affirming lower court's grant of summary judgment as plaintiffs were unable to establish the identity or badge number of the officers who mistreated them).

Moreover, Plaintiff's deposition testimony, outlined below, confirms he is unable to support his excessive force claims against Officers Amross and Oliver.

Q.    All right.  And you make some pretty specific allegations in that complaint.  And what I'm - - if I understand what you're telling me, let's just get this on the record, your complaint is based upon what's in the police report?

A.    As far as who was there and –

Q.    Who was involved with your situation?

A.    Yes.

Q.    But what each officer did in terms of whether or not they inflicted excessive force on you, you can't tell me with any particularity, other than this officer hit you in the right eyebrow, am I right?

A.    Yes.

(ECF No. 29-3, PageID.270-71).

*          *          *          *          *          *

Q.    [A]s far as specifically what Officers Wellman,

21

Oliver and Amross did towards you, you can't say with any specificity or particularity, can you?

A.      Other than what the police report said, no.

(*Id.* at PageID.276).

In light of Plaintiff's inability to describe with particularly the alleged unconstitutional actions undertaken by Officers Amross and Oliver, the undersigned recommends that summary judgment be granted in their favor and the claims filed against them be dismissed with prejudice.

3.      Gross Negligence

It appears Plaintiff has also alleged a state-law claim for Gross Negligence. Where, as here, the court has "dismissed all claims over which it has original jurisdiction," the Sixth Circuit has repeatedly advised that the district courts should not exercise supplemental jurisdiction over state law claims.  *See*, *e.g.*, *Brown v. Cassens Transport Co.*, 546 F.3d 347, 363 (6th Cir. 2008).   Therefore, the court should decline supplemental jurisdiction over this state law claim.  *See* 28 U.S.C. § 1367(c).  The undersigned recommends Plaintiff's gross negligence claim be dismissed without prejudice.

## IV.    RECOMMENDATION

For the reasons set forth below, the undersigned **RECOMMENDS** that Defendant Officers' motion for summary judgment be **GRANTED** and that Plaintiff's federal claims be **DISMISSED** with prejudice.  The undersigned further

**RECOMMENDS** that the Court decline supplemental jurisdiction over the gross negligence claim.

The parties to this action may object to and seek review of this Report and Recommendation but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and E.D. Mich. Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are

without merit, it may rule without awaiting the response.

Date: March 26, 2021                    s/Curtis Ivy, Jr.
                                        Curtis Ivy, Jr.
                                        United States Magistrate Judge


## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 26, 2021, by electronic means and/or ordinary mail.

                                        s/Kristen MacKay
                                        Case Manager
                                        (810) 341-7850